UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 5:22-cr-46-1 |
| JOSHUA PUMA, | ) | |
| Defendant. | ) | |

**Defendant's Memorandum Re:**
***Counterman v. Colorado* and Its Impact On 18 U.S.C. § 875(c)**

NOW COMES, defendant, Joshua Puma, at the request of the Court and in anticipation of his Sentencing Hearing, now set for July 26, 2023, and offers the following memorandum of law. On February 2, 2023, Mr. Puma pled guilty to three counts of threats transmitted by interstate communication, in violation of 18 U.S.C. § 875(c). On the day before his previously scheduled sentencing hearing, the U.S. Supreme Court issued a decision announcing a new test for true threats under the First Amendment. *Counterman v. Colorado*, --- S.Ct. ---2023 WL 4187751, at *6 (June 27, 2023). Counsel requested a continuance to analyze how this decision impacted Mr. Puma's case, if at all.

The conclusion reached is that *Counterman*, and the new reckless standard for true threats set forth therein, *does* impact an essential element for a prosecution under § 875(c). This is because an objective test is no longer sufficient to prove the words underlying the offense conduct were a threat or true threat, which is an essential element of the crime, separate and distinct from the requisite mens rea for the offense as established in *United States v. Elonis,* 575 U.S. 723, 740 (2015). Mr. Puma's plea colloquy, wherein the Court recited the pre-*Counterman* objective test for the threats/true threats essential element, is therefore rendered insufficient.

1

*Memorandum of Law*

Prior to *United States v. Elonis,* 575 U.S. 723, 135 S.Ct. 2001 (2015)*,* for prosecutions of 18 U.S.C. § 875(c) the government was required to prove the communication at issue was a true threat, outside the scope of First Amendment protections, typically under an objective test, but the statutory text of 18 U.S.C. § 875(c) was silent as to the standard for any requisite mens rea. Determining what mens rea, if any, <u>the statute</u> required was the question taken up in *United States v. Elonis,* where the Supreme Court held that 18 U.S.C. § 875(c) requires more than mere negligence; more than just proof "that a reasonable person would regard [the] communications as threats." *United States v. Elonis,* 575 U.S. 723, 740 (2015). In overturning the defendant's conviction, *Elonis* reiterated the principle that courts must presume a scienter requirement in "federal criminal statutes that are silent on the required mental state." *Id.* at 736 ("When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute 'only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct.'") (quoting *Carter v. United States*, 530 U.S. 255, 269, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000)). The Court did not specify the *mens rea* required under the statute but made clear that a simple negligence standard was insufficient for criminal liability, and further held that, "[t]here is no dispute that the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Id.* at 740. The Court declined to opine as to whether recklessness would suffice *statutorily* for 18 U.S.C. § 875(c)'s requisite mens rea. *Id.* at 740-741.

The *Elonis* decision did not address defendant's statements in the First Amendment's light, despite granting certiorari, in part, on whether the First Amendment requires that the

"defendant be aware of the threatening nature of the communication." *Id.* at 723. The decision and the holding were purely statutory. *Id.* at 740; *see also, United States v. Nissen*, 432 F.Supp.3d 1298, 1316 (D.N.M., 2020)("Accordingly, *Elonis v. United States*, which requires something more than a negligence standard as a matter of statutory construction, offers no guidance as to the First Amendment's true-threat requirement."). Justice Alito's concurrence and dissent discussed that, in his opinion, the First Amendment requires only the defendant's recklessness in making a threat before exposing him to prosecution under § 875(c). *Id.* at 748. But the majority declined to opine as to First Amendment requirements or whether recklessness would be a sufficient mens rea under the statute. *Id.* at 740-741.

Post-*Elonis,* for a prosecution of § 875(c), the government still had to prove that the words amounted to a "true threat" such that the criminal prosecution for the speaker's words does not violate the First Amendment, but also now had the burden of proving that defendant had a mens rea higher than mere negligence (knowingly and intentionally) to transmit a threat. A summary of the post-*Elonis* § 875(c) essential elements are as follows:

> **First**, that the defendant <u>threatened</u> to kidnap or to injure [name of victim], as charged in the Indictment… The first element the government must establish beyond a reasonable doubt is that the words communicated by the defendant were in fact a threat…To determine whether or not the defendant made a threat, you should consider the circumstances under which the statement was made, including its context with respect to surrounding conversation, the language the defendant used, and the reaction of those who heard or read the statement.
>
> **Second**, that the threat was transmitted in interstate (or foreign) commerce; and
>
> **Third**, that the defendant transmitted the threat knowingly and intentionally… To establish this element, the government must prove that the defendant knowingly and intentionally sent the threat to [the victim] and that this did not occur by accident, mistake, or negligence.

2 Modern Federal Jury Instructions, ¶ 31.02, *Threats Transmitted by Interstate Communication (18 U.S.C. § 875(c))* (distinguishing the threat/true threat element (first element) as separate and

distinct from the mens rea element (third element—intent to transmit))(emphasis added). Of course, the government's evidence as to a defendant's intent to transmit a threat may overlap with proving the defendant's words are a threat and unprotected speech/true threats. But, nonetheless, even post-*Elonis,* the Model Jury Instructions reflect that these two elements remained separate and distinct inquiries with two separate standards. *See e.g. United States v. Wright-Darrisaw*, 617 Fed.Appx. 107, 108–09 (2nd Cir. 2015)(in a case dealing with 18 U.S.C. § 871(a) threats, discussing that even after the holding in *Elonis,* the government must still prove the statement was objectively a true threat and must also prove the statutory standard); *see also, United States. v. White*, 810 F.3d 212, 220 (4th Cir. 2016)("*Elonis* does not affect our constitutional rule that a "true threat" is one that a reasonable recipient familiar with the context would interpret as a serious expression of an intent to do harm.").

Shortly after the *Elonis* decision, in an appeal of a prosecution for 18 U.S.C. § 875(b) and 875(c) threats, the Fourth Circuit shed light on its interpretation of the new mens rea set forth in *Elonis*, and how it interacts with First Amendment jurisprudence:

> What that means, in this circuit after *Elonis*, is that a conviction pursuant to § 875(c) now entails "what the [statute requires] (a subjectively intended threat) and [also] what constitutional avoidance principles demand (an objectively real threat)." That is: (1) that the defendant knowingly transmitted a communication in interstate or foreign commerce; (2) that the defendant subjectively intended the communication as a threat; and (3) that the content of the communication contained a "true threat" to kidnap or injure. To prove the second element, the Government, consistent with Elonis, must establish that the defendant transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," or, perhaps, with reckless disregard for the likelihood that the communication will be viewed as a threat. *See Elonis*, 135 S.Ct. at 2012–13. And to establish the third element, in keeping with our prior cases, the prosecution must show that an ordinary, reasonable recipient who is familiar with the context in which the statement is made would interpret it as a serious expression of an intent to do harm.

4

*United States v. White*, 810 F.3d 212, 221 (4th Cir. 2016). Courts within the Second Circuit discussed whether *Elonis* had an impact on the test applied to true threats, but it appears this question went unanswered. *See United States v. Hunt*, 573 F.Supp.3d 779, 793 (E.D.N.Y. 2021)("The Second Circuit has not squarely addressed 'whether the objective test for a true threat has been supplemented with a subjective test by [*Black* and *Elonis*].'"). Instead, the Second Circuit continued to hold that in order to pass constitutional muster for prosecution of alleged true threats, an objective test that focuses on the "reasonable person" familiar with the circumstances was sufficient. *See United States v. Hunt*, 573 F.Supp.3d 779, 796 (E.D.N.Y. 2021)(post-*Elonis,* holding "[t]his Circuit's test for whether conduct amounts to a true threat" remains "an objective one," allowing Congress to " 'protect [public officials] from the fear of violence' and 'from the disruption that fear engenders.' "); *National Coalition on Black Civic Participation v. Wohl*, 498 F.Supp.3d 457, 478 (S.D.N.Y. 2020)("The Second Circuit applies an objective test to determine whether a defendant's statement is a true threat. Specifically, the "test for whether conduct amounts to a true threat is ... whether an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury.'")(internal citations omitted).

    However*,* Courts continued to be divided as to the First Amendment standard for true threats since the *Elonis* decision did not address First Amendment issues, and the true threats decision in *Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536 (2003) left open questions as to what test the First Amendment demands to prove true threats. The Second Circuit continued to apply an objective test, and other circuits and state courts held similarly that an objective test remained sufficient to prove true threats. *See e.g. United States v. Leveke,* 38 F.4th 662, 668 (8th Cir. 2022)(holding statute criminalizing interstate communication of a threat under 18 U.S.C. §

875(c) is violated if the government proves the defendant communicated a true threat **and** transmitted that communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat, noting, "[t]his Court has defined a "true threat" as "a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another."). Other courts held differently and required an objective component *and* a subjective component for proving true threats, even pre-*Elonis*. *See United States v. Hayner*, 371 F.Supp.3d 700, 704 (N.D.Cal. 2018)("The test for whether speech constitutes a true threat has two elements, one objective and the other subjective."); *see also Fogel v. Collins*, 531 F.3d 824, 831 (9th Cir. 2008)("This circuit has thus far avoided deciding whether to use an objective or subjective standard in determining whether there has been a "true threat."). The Sixth Circuit approved a formulation joining the first and third recommended elements. *United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012), *cert. denied*, 571 U.S. 817, 134 S. Ct. 59, 187 L. Ed. 2d 25 (2013) (in § 875(c) threats case, requiring a knowing communication in interstate commerce, and requiring that the government prove, first, that the defendant made a threat, second, that the threat was knowingly transmitted in interstate commerce, and third, that the threat was to injure). *See also* 2 Modern Federal Jury Instructions, ¶ 31.01, *Threats Against the President (18 U.S.C. § 871)*, Instruction 31-4 Second Element—Threat (discussing split amongst Circuits and various tests (objective versus subjective or some combination of the two) for determining true threats).

Thus, in *Colorado v. Counterman*, the Supreme Court set out to resolve the split and other uncertainties as to what test the First Amendment requires to prove true threats. By a vote of 7-2, the Court ruled that the lower court had applied the wrong test (an objective one) to determine whether the defendant's statements were "true threats," which are not protected by the

6

First Amendment. The Court held that in order to establish that a statement is a "true threat" unprotected by the First Amendment, the prosecution must prove that the defendant had some subjective understanding of the statements' threatening nature, based on a showing no more demanding than recklessness. *Counterman v. Colorado*, --- S.Ct. ---, 2023 WL 4187751, at *6 (June 27, 2023). Instead of focusing on whether a reasonable person would regard the man's statements as a threat of violence (the objective standard previously applied by most courts, *see above*), the Supreme Court ruled, courts should look at whether prosecutors had shown that the defendant had made the threats recklessly – that is,

> A person acts recklessly…when he "consciously disregard[s] a substantial [and unjustifiable] risk that the conduct will cause harm to another." *Voisine v. United States*, 579 U.S. 686, 691, 136 S.Ct. 2272, 195 L.Ed.2d 736 (2016) (internal quotation marks omitted). That standard involves insufficient concern with risk, rather than awareness of impending harm. See *Borden* v. *United States*, 593 U. S. ——, ——, 141 S.Ct. 1817, 1823–1824, 210 L.Ed.2d 63 (2021) (plurality opinion). But still, recklessness is morally culpable conduct, involving a "deliberate decision to endanger another." *Voisine*, 579 U.S. at 694, 136 S.Ct. 2272. In the threats context, it means that a speaker is aware "that others could regard his statements as" threatening violence and "delivers them anyway." *Elonis*, 575 U.S. at 746, 135 S.Ct. 2001 (ALITO, J., concurring in part and dissenting in part).

*Counterman v. Colorado*, --- S.Ct. ---, 2023 WL 4187751, at *6 (June 27, 2023).

Practically speaking, despite the two separate and distinct burdens of the true threat test in *Counterman,* and the mens rea required by the statute as set forth in *Elonis,* it seems likely that most of the time "[a] statutorily sufficient § 875(c) conviction [ ] is unlikely to run afoul of the First Amendment." *United States v. Nissen,* 432 F.Supp.3d 1298, 1318 (D.N.M. 2020). However, that might not always be the case:

> It is perhaps possible that a defendant might subjectively intend to threaten, satisfying § 875(c), but a reasonable person would not view the communication as threatening, barring prosecution under the First Amendment. Given the context-heavy true-threats analysis, however, this is unlikely. *See Nielander v. Bd. of Cty.*

> *Comm'rs of Cty. of Republic, Kan.*, 582 F.3d 1155, 1167-68 (10th Cir. 2009). As stated by the United States Court of Appeals for the First Circuit, "[i]t is rare that a jury would find that a reasonable speaker would have intended a threat under the particular facts of a case but that a competent defendant did not." *United States v. Clemens*, 738 F.3d 1, 12 (1st Cir. 2013).

*United States v. Nissen*, 432 F.Supp.3d 1298, 1317 n. 5 (D.N.M. 2020). Thus, with that possibility, and under the current framework of *Counterman* and *Elonis*, the essential elements of an § 875(c) prosecution now must include proof or admission of a true threat made with at least a reckless standard **and** a mens rea with more than a negligence standard, where knowingly or purposefully will be sufficient under the statute.

*Application to Mr. Puma's Case and Conclusion*

The holding in *Counterman* is purely based on what the First Amendment requires to prove a "true threat" and settled a division amongst the circuits as to this question. It does not directly affect the statutory holding from *Elonis* as to what the requisite mens rea is under 18 U.S.C. § 875(c). Thus, even if a statute requires arguably a different or arguably heightened mens rea, the *Counterman* decision makes clear that there is also a reckless standard the government must meet to prove that the speech also constitutes a true threat. Although *Elonis* declined to opine if recklessness would be sufficient under the statute, the *Counterman* decision still has not answered that question. Rather, it answers a different question about what the *First Amendment* requires for prosecutable threats, which is a separate burden on the government, apart from any statutory elements.

In Mr. Puma's February 2023 plea colloquy, the threat essential element as set forth by the Court was an objective standard, as was the law pre-*Counterman*; that, "the circumstances concerning the threat were such that an ordinary reasonable recipient familiar with the context of the communication would interpret as a threat of true injury." Uncertified Rough Draft of 2/2/23

8

Change of Plea Hearing at 14. This objective standard no longer suffices under the First Amendment after *Counterman*. The updated essential elements are as follows:

> A summary of the post-*Counterman* 875(c) essential elements are as follows:
>
> First, that the defendant <u>threatened</u> to kidnap or to injure [name of victim], as charged in the Indictment…~~The first element the government must establish beyond a reasonable doubt is that the words communicated by the defendant were in fact a threat…To determine whether or not the defendant made a threat, you should consider the circumstances under which the statement was made, including its context with respect to surrounding conversation, the language the defendant used, and the reaction of those who heard or read the statement~~. **New test**: Defendant acted "recklessly" such that he "consciously disregard[ed] a substantial [and unjustifiable] risk that [his] conduct [would] cause harm to another," and "that he was aware 'that others could regard his statements as" threatening violence and "deliver[ed] them anyway.'"
>
> Second, that the threat was transmitted in interstate (or foreign) commerce; and
>
> Third, that the defendant transmitted the threat knowingly and intentionally…To establish this element, the government must prove that the defendant knowingly and intentionally sent the threat to [the victim] and that this did not occur by accident, mistake, or negligence.

2 Modern Federal Jury Instructions, ¶ 31.02, *Threats Transmitted by Interstate Communication (18 U.S.C. § 875(c))*; *Counterman v. Colorado*, --- S.Ct. ---, 2023 WL 4187751, at *6 (June 27, 2023)(internal citations omitted). Because Mr. Puma has not admitted to the new reckless standard announced by *Counterman* for true threats, the February 2023 plea colloquy is currently insufficient to pass constitutional muster.

WHEREFORE, Mr. Puma respectfully requests that the Court take notice of this memorandum of law as set forth above and act as it deems necessary to correct the February 2, 2023, plea colloquy.

Dated:  July 10, 2023

MICHAEL L. DESAUTELS<br>Federal Public Defender

By: */s/ Sara M. Puls*
Sara M. Puls
Assistant Federal Public Defender
Office of the Federal Public Defender
95 Pine Street, Suite 150
Burlington, VT 05401
802-862-6990

10