```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT


United States of America    )
                            )
                            )
v.                          ) Case No. 5:22-cr-46-1
                            )
                            )
Josh Puma                   )
                            )
_____)


RE:   Change of Plea Hearing

DATE:   February 1, 2023

LOCATION:   Via Video Conference

BEFORE:   Honorable Geoffrey W. Crawford
          Chief District Judge
```

**APPEARANCES**:

Wendy L. Fuller, AUSA
United States Attorney's Office
District of Vermont
PO Box 570
Burlington, VT 05402-0570


Sara M. Puls, AFPD
Office of the Federal Public Defender
District of Vermont
95 Pine Street, Suite 150
Burlington, VT 05401


TRANSCRIBED BY:   Sunnie Elizabeth Donath, RMR
         United States District Court Reporter
                *verbatim@vermontel.net*

```
 1                    (The Court opened at 1:04 p.m.)
 2                    COURTROOM DEPUTY:  Your Honor, the matter before the
 3     Court is Criminal Number 22-46, United States of America versus
 4     Josh Puma.  Present on behalf of the government is Assistant
 5     United States Attorney Wendy Fuller.  The defendant is present
 6     with his attorney, Sara Puls.  All parties are present by video
 7     conference, and we are here for a change of plea.
 8                    THE COURT:  All right.  Afternoon.  Good to see
 9     everybody.  Mr. Puma, as we have before, I have a couple of
10     questions regarding the video process.
11                    THE DEFENDANT:  Yes.
12                    THE COURT:  I can state for the record that I know
13     you and recognize you and that it is, in fact, Mr. Puma here
14     with us today.  Do you appreciate that you're appearing by
15     video?
16                    THE DEFENDANT:  Yes, I do, Your Honor.
17                    THE COURT:  And do you understand you have every
18     right to appear in person in court for this change of plea
19     hearing and every other stage of the case?
20                    THE DEFENDANT:  Yes, I do, Your Honor.
21                    THE COURT:  And did you talk before now with your
22     attorney, Ms. Puls, about appearing by video?
23                    THE DEFENDANT:  Yeah, I, I told her that I would
24     prefer to appear by video.
25                    THE COURT:  Fair enough.  And do you understand, if
```

1    you wish to speak privately with her during our hearing, you
2    just have to say so and we'll take a break and make sure that
3    you and she can talk?
4            THE DEFENDANT:  Yes, sir.  Yeah, I do.
5            THE COURT:  All right.  With all that on the table,
6    I'll join in your decision to appear by video.  It's permitted
7    by Congress and by the rules of the judiciary.  It's in the
8    interest of justice in light of the continuing health
9    emergency, which is, as you can see, has us back in masks in
10   Rutland, which is a high, a high infection rate county for now.
11   So, with all of those concerns on the table, we'll proceed with
12   a video change of plea.
13        Before we dive into that, I drafted some statement of the
14   elements of this particular offense with a couple of recent
15   Second Circuit and Supreme Court decisions.  It got a little
16   more involved than I had appreciated at the outset, but,
17   Ms. Fuller, any improvements to offer?
18           ATTORNEY FULLER:  No, I think those are correct, Your
19   Honor.
20           THE COURT:  Okay.  And Ms. Puls?
21           ATTORNEY PULS:  I don't have any comments or
22   objections to what was sent, Your Honor.
23           THE COURT:  Fair enough.  Thank you both.
24           ATTORNEY PULS:  Thank you.
25           THE COURT:  Mr. Puma, before I can accept your guilty

1    plea, I need to ask you a series of questions.  The reason I do
2    it is to make certain that your legal rights are protected and
3    that your plea is voluntary.  What we say is recorded.  So, as
4    you have been, I know you'll answer my questions aloud "yes" or
5    "no" or whatever the right answer is.
6         If you don't understand what I've asked or you don't
7    understand something else that you hear today, please say so.
8    It's my job to take time to discuss your rights fully with you.
9    It's important that you understand my questions and what
10   everything else that you hear being said.  And, if at any time
11   you wish to speak privately with Ms. Puls, just say so, and
12   I'll make certain that you're able to speak with her in a
13   private, confidential type setting.  Do you understand what
14   I've said so far?
15              THE DEFENDANT:  Yes, sir.
16              THE COURT:  At this time, I'm going to ask that you
17   be placed under oath.  Do you understand that, if you were to
18   make a false statement today, that it could be used against you
19   in a separate prosecution for perjury or for making a false
20   statement?
21              THE DEFENDANT:  Yes.
22              THE COURT:  Okay.
23                   JOSH PUMA,
24         having been duly sworn to tell the truth,
25              testifies as follows:

1          THE COURT:  Could you state your full name, please?
2          THE DEFENDANT:  Josh Puma.
3          THE COURT:  Mr. Puma, what is your age?
4          THE DEFENDANT:  36.
5          THE COURT:  And how far you have you gone in school?
6          THE DEFENDANT:  I finished high school in 2005, and I
7   have a couple of semesters of college, but I never finished.
8          THE COURT:  Okay.  And what types of employment have
9   you held over the years?
10         THE DEFENDANT:  I've been a server at a restaurant.
11  I've worked at supermarkets.  I worked night shift at IBM when
12  the facility in Essex was still running.
13         THE COURT:  So restaurant-oriented work?
14         THE DEFENDANT:  Yeah.
15         THE COURT:  Okay.  Is English your first language?
16         THE DEFENDANT:  Yes, it is.
17         THE COURT:  Are you a US citizen?
18         THE DEFENDANT:  Yes.
19         THE COURT:  Are you currently under the care of a
20  doctor or a psychologist or psychiatrist, anybody like that?
21         THE DEFENDANT:  No, not currently.  I just see the
22  person who is the facility provider, but, other than that, no.
23         THE COURT:  Okay.  And do you see a counselor at the,
24  at the jail where you're held?
25         THE DEFENDANT:  Not regularly, but I have seen them a

```
 1    few times since I've been here but just not on a regular basis.
 2    Every now and then, they'll be down, and I'll go talk to them.
 3              THE COURT:  And have you recently been hospitalized
 4    or treated for drug addiction?
 5              THE DEFENDANT:  I went to Berlin at the end of the
 6    last year and the beginning of this year, I believe.
 7              THE COURT:  The beginning of --
 8              THE DEFENDANT:  It might have been the beginning of
 9    this year.
10              THE COURT:  You mean 12 months ago?
11              THE DEFENDANT:  It was around January, I believe.
12              THE COURT:  About a year ago?
13              THE DEFENDANT:  Yes.
14              THE COURT:  Okay.  And do you take drugs or medicine
15    at this time?
16              THE DEFENDANT:  Yeah, I have prescriptions I'm
17    receiving here, yes.
18              THE COURT:  Do any of those drugs interfere with your
19    ability to understand our change of plea proceeding?
20              THE DEFENDANT:  I don't believe so, no.
21              THE COURT:  Have you taken any illegal drugs or
22    consumed alcohol within the last 24 hours?
23              THE DEFENDANT:  No, Your Honor.
24              THE COURT:  Do you feel that you have a clear
25    understanding of this change of plea proceeding?
```

```
 1                THE DEFENDANT:  Yes, I do.
 2                THE COURT:  All right.  Counsel for the government or
 3    the defense have any doubt as to Mr. Puma's competence to enter
 4    a valid plea at this time?
 5                ATTORNEY PULS:  No, Your Honor.
 6                ATTORNEY FULLER:  No, Your Honor.
 7                THE COURT:  All right.  Thank you both.  I've
 8    received a copy of the plea agreement, and I have some
 9    questions about that process, Mr. Puma.  First, are you fully
10    satisfied with the counsel, representation, and legal advice
11    given to you in this case by your attorney, Ms. Puls?
12                THE DEFENDANT:  Yes.
13                THE COURT:  Did you have an opportunity to read and
14    talk over the plea agreement with her before you signed it?
15                THE DEFENDANT:  Yeah, I did, Your Honor.
16                THE COURT:  Were you able to speak with her in a
17    confidential type setting where people couldn't overhear you
18    and you felt free to ask her any questions that you had?
19                THE DEFENDANT:  Yes.
20                THE COURT:  Was she able to answer all your
21    questions?
22                THE DEFENDANT:  Yes, sir.
23                THE COURT:  At the end of that discussion, did you,
24    yourself, sign the plea agreement?
25                THE DEFENDANT:  Did I sign it?
```

```
1                THE COURT:  Yes, did you sign it?
2                THE DEFENDANT:  Yeah, yeah, the thing I received in
3     the mail I signed, yes.
4                THE COURT:  Okay.  Has -- do you understand the terms
5     of the plea agreement?
6                THE DEFENDANT:  Yeah, I do.
7                THE COURT:  All right.  Let me make sure I do and
8     that we understand them the same way.  The agreement
9     anticipates that you'll plead guilty this afternoon to Counts
10    1, 2, and 3 of the indictment.  These charge you with issuing a
11    threat to injure another person.  That, the plea is an open
12    plea in the sense that it contains no limit on the length of
13    any sentence, other than, of course, that it can't be longer
14    than the period allowed by law.
15        And, in the plea agreement at Paragraph 10, the government
16    makes some promises to you, and these are that, if you follow
17    the plea agreement and abide by its terms, first of all, they
18    won't prosecute you in the District of Vermont for any other
19    criminal offenses known to the government as of the date it
20    signed the plea agreement committed by you in the District of
21    Vermont regarding threats that you may have issued over the
22    Vermont Department of Corrections reporting line in 2021;
23    second, recommend that you receive at least two points of
24    credit for acceptance of responsibility in computing the
25    guidelines calculations and potentially an additional third
```

```
 1    point.
 2         I think those are the salient features.  Anything,
 3    Ms. Fuller, that I've missed from your perspective?
 4              ATTORNEY FULLER:  No, Your Honor.
 5              THE COURT:  Ms. Puls?
 6              ATTORNEY PULS:  No, Your Honor.
 7              THE COURT:  Is that how you understand the plea
 8    agreement, Mr. Puma?  Was that -- I'm sorry.  I couldn't quite
 9    hear.  Was that a "yes"?
10              THE DEFENDANT:  Yes.
11              THE COURT:  Okay.  That's how I understand it too.
12    So I think we are all in agreement.  Does the plea agreement
13    represent the complete understanding you have with the
14    prosecution?
15              THE DEFENDANT:  Yeah, I believe so.
16              THE COURT:  Is there any further agreement with the
17    government which isn't written down in the plea agreement?
18              THE DEFENDANT:  I don't know.  I don't think so.
19              THE COURT:  Has anyone made a promise or an assurance
20    to you that's not contained in the plea agreement to persuade
21    you to accept it?
22              THE DEFENDANT:  No.
23              THE COURT:  Has anyone made a threat against you to
24    persuade you to accept the agreement?
25              THE DEFENDANT:  No.
```

1                    THE COURT:  Do you understand that the plea agreement
2           contains no limit on the length of any sentence other than, of
3           course, that it not exceed the length allowed by law?
4                    THE DEFENDANT:  Yes, sir.
5                    THE COURT:  Ms. Puls, were all formal plea offers
6           from the government conveyed to Mr. Puma?
7                    ATTORNEY PULS:  Yes, Your Honor.
8                    THE COURT:  Mr. Puma, do you understand that the
9           three offenses to which you're pleading guilty are felonies;
10          that, if your plea is accepted, you'll be convicted of these
11          felonies and that conviction may deprive you of important civil
12          rights in the future, many dependent on state law, the law of
13          the state in which you live, but these can include rights such
14          as the right to vote, the right to hold public office, the
15          right to serve on a jury, and the right to possess any kind of
16          firearm?
17                   THE DEFENDANT:  Yeah.
18                   THE COURT:  Do you understand that the maximum
19          possible penalty provided by law for the charge of issuing a
20          threat in interstate commerce to injure another person is up to
21          five years of imprisonment on each count, up to one year of
22          supervised release on each count, up to a $250,000 fine and a
23          $100 special assessment, again, on each count?
24                   THE DEFENDANT:  Yes, sir.
25                   THE COURT:  I need to tell you that your sentence

1   will be determined by a combination of advisory sentencing
2   guidelines, possible departures from those guidelines, in other
3   words, a departure downwards or upwards from the guidelines,
4   and other statutory sentencing factors that the court considers
5   in reaching a sentencing decision.  Have you and Ms. Puls
6   talked privately about how these guidelines might apply to your
7   case?
8              THE DEFENDANT:  Yes, sir.
9              THE COURT:  And do you understand that the judge
10  can't determine the guideline range for your case until after a
11  presentence report has been completed?
12             THE DEFENDANT:  Yes, sir.
13             THE COURT:  And do you understand that I can't
14  determine the guideline range until after you and the
15  government both have a chance to challenge the facts and the
16  application of the guidelines recommended by the probation
17  officer?
18             THE DEFENDANT:  Yes, sir.
19             THE COURT:  And do you understand the sentence
20  ultimately imposed may be different from any estimate your
21  attorney or anyone else may have given you?
22             THE DEFENDANT:  Yes, sir.
23             THE COURT:  Do you understand that, after your
24  initial guideline range has been determined, that the court has
25  the additional authority to depart upwards or downwards from

1     that range, and I will also examine other statutory factors,
2     sentencing factors under the law that may result in a sentence
3     that's either greater or lesser than the advisory guideline
4     sentence?
5                THE DEFENDANT:  Yes, sir.
6                THE COURT:  Do you understand that parole has been
7     abolished in the federal system; that, if you're sentenced to
8     prison, you'll not be released partway through your term on
9     parole as frequently happens in state sentencing systems such
10    as the Vermont system?
11               THE DEFENDANT:  Yeah.  Yes, sir.
12               THE COURT:  Do you understand that, under some
13    circumstances, you or the government may have the right to
14    appeal any sentence that I impose?
15               THE DEFENDANT:  Yes.
16               THE COURT:  I'm going to change subjects to talk
17    about your trial rights.  These are important constitutional
18    rights which protect a person at the time of his trial.  These
19    are rights which you have now, but, if you plead guilty this
20    afternoon, you give up your right to a trial.  So, at the same
21    time, in effect, you give up your trial protection rights.
22    That's why we talk about these rights before you plead guilty.
23    Do you follow what I'm trying to say?
24               THE DEFENDANT:  Yes, Your Honor.
25               THE COURT:  Do you understand that you have every

1  right to plead not guilty to any offense charged against you
2  and to take the case to a trial?
3          THE DEFENDANT:  Yes.
4          THE COURT:  Do you understand you would then have the
5  right to a trial in front of a jury?
6          THE DEFENDANT:  Yes.
7          THE COURT:  Do you understand that all members of the
8  jury would have to agree unanimously that you were guilty
9  before you could be convicted?
10         THE DEFENDANT:  Yes, sir.
11         THE COURT:  Do you understand you'd have the right to
12 participate in selecting jury members from members of the
13 greater community?
14         THE DEFENDANT:  Yeah.  Yes.
15         THE COURT:  Do you understand at trial you'd be
16 presumed to be innocent, the government would have to prove you
17 guilty beyond a reasonable doubt in order to obtain a
18 conviction?
19         THE DEFENDANT:  Yes, Your Honor.
20         THE COURT:  Do you understand you'd have the right to
21 the assistance of an attorney in your defense, appointed by the
22 court if necessary, at trial and at every other stage of the
23 case?
24         THE DEFENDANT:  Yes, sir.
25         THE COURT:  Do you understand you'd have the right to

1     see and hear all the witnesses and have them cross-examined in
2     your defense?
3               THE DEFENDANT:  Yes.
4               THE COURT:  Do you understand you'd have the right to
5     decline to testify, unless you voluntarily chose to testify in
6     your own case?
7               THE DEFENDANT:  Yes, sir.
8               THE COURT:  Do you understand you'd have the right to
9     testify and to present your own evidence at a trial?
10              THE DEFENDANT:  Yes.
11              THE COURT:  And do you understand you'd have the
12    right to compel witnesses to come to court to testify in your
13    defense?
14              THE DEFENDANT:  Yes, Your Honor.
15              THE COURT:  In other words, do you understand that at
16    a trial you could put on your own witnesses and your own
17    evidence and your own testimony?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Do you understand that, if a witness
20    didn't wish to come, the court could order him or her to come
21    and testify anyway?
22              THE DEFENDANT:  Yes, sir.
23              THE COURT:  Do you understand that, if you decided
24    not to testify or not to put on any evidence of your own, that
25    that decision could not be used against you at trial?

 1                    THE DEFENDANT:  Yes, Your Honor.
 2                    THE COURT:  Do you understand that nobody could force
 3     you to testify because you have a privilege against
 4     incriminating yourself?
 5                    THE DEFENDANT:  Yes.
 6                    THE COURT:  Do you understand that, if you were found
 7     guilty after a trial, you could appeal your conviction to a
 8     higher court?
 9                    THE DEFENDANT:  Yeah.  Yes.
10                    THE COURT:  Do you understand that, by entering a
11     plea of guilty, there will be no trial and you will have waived
12     or given up your right to a trial, as well as these trial
13     protection rights which you and I have just talked about?
14                    THE DEFENDANT:  Yes, I understand that.
15                    THE COURT:  Do you understand that at a trial the
16     government would have to prove the essential elements of the
17     offense of transmitting a threat by interstate commerce beyond
18     a reasonable doubt?  And these elements are as follows:
19        One, the defendant threatened to kidnap or to injure
20     another individual as charged in the indictment; two, the
21     circumstances concerning the threat were such that an ordinary,
22     reasonable recipient familiar with the context of the
23     communication would interpret it as a true threat of injury;
24     three, the defendant transmitted the threat knowingly and
25     intentionally and for the purpose of issuing a threat or with

1  knowledge that the communication would be viewed as a threat;
2  and, four, the threat was transmitted in interstate commerce.
3         Do you understand those are the legal elements of the
4  charge of transmitting a threat by interstate commerce?
5              THE DEFENDANT:  Yes, sir.
6              THE COURT:  Could the prosecution provide a summary
7  of the facts that you would be prepared to prove at trial?
8              ATTORNEY FULLER:  Yes, Your Honor.  Thank you.  The
9  facts are as follows:
10        In the fall of 2021, the defendant, Josh Puma, was
11 incarcerated in a Vermont state prison.  On September 30th
12 2021, October 26th 2021, and November 30th 2021, Puma called a
13 prison reporting line and made threats to kill a Vermont state
14 court judge, to sexually assault a state's attorney, and to
15 kill a local defense attorney.  Puma knowingly and
16 intentionally made these threats for the purpose of issuing the
17 threats and with the knowledge that the communications would be
18 viewed as a threat.
19        The reporting line that Puma called is maintained by
20 GlobalTel Link, and the phone calls that Puma made were stored
21 on GlobalTel Link's servers located in Texas.  Therefore, these
22 communications threatening to injure and kill the person of
23 another were transmitted in interstate commerce.
24             THE COURT:  Right.  And then we have, I think, one
25 more factual element would be the circumstances concerning the

1  threat.  Did I miss that when you discussed that?
2           ATTORNEY FULLER:  No.  I, no, but the circumstances
3  concerning the threat would cause a reasonable recipient
4  familiar with the communication to interpret the threats as a
5  true threat of injury.
6           THE COURT:  Fair enough.  Thank you.  Mr. Puma, has
7  the government accurately described the offense and your role
8  in it?
9           THE DEFENDANT:  Yeah, I believe so, Your Honor.
10          THE COURT:  And do you understand that, that the
11 summary of the, of the facts is offered in support of, not just
12 one charge, but each of the charges on the, on the various
13 dates mentioned?
14          THE DEFENDANT:  Yeah.  Yes, sir.
15          THE COURT:  And do you disagree with any portion of
16 the prosecution's description of your conduct?
17          THE DEFENDANT:  No, I do not.
18          THE COURT:  Do you intend to plead guilty because you
19 are, in fact, guilty of these three charges of transmitting a
20 threat by interstate commerce?
21          THE DEFENDANT:  Yes, unfortunately, I agree.
22          THE COURT:  How do you plead to Count 1, guilty or
23 not guilty?
24          THE DEFENDANT:  I plead guilty.
25          THE COURT:  And how do you plead to Count 2, guilty

1    or not guilty?
2               THE DEFENDANT:  Guilty as well.
3               THE COURT:  How do you plead to Count 3, guilty or
4    not guilty?
5               THE DEFENDANT:  Guilty, sir.
6               THE COURT:  It is the finding of the court in the
7    case of the United States versus Josh Puma that the defendant
8    is fully competent and capable of entering an informed plea,
9    that he's aware of the nature of the charges and the
10   consequences of the plea.  The plea of guilty is a knowing and
11   voluntary plea supported by an independent basis in fact
12   containing each of the essential elements of the offense, and
13   that is true for each of the three counts.  The plea to each
14   count is therefore accepted.  The defendant is adjudged guilty
15   of the, of the offense as described in Count 1, Count 2, and
16   Count 3.
17        So I'll set a sentencing date.  Between now and then, a
18   presentence report will be prepared by the probation office to
19   assist the judge in sentencing.  You'll be asked to give
20   information for the report.  Your attorney may be present for
21   any interview if you wish.  The court will permit you and Ms.
22   Puls to read the presentence report in advance of the
23   sentencing hearing and file any objections to the report before
24   the hearing.  At the hearing you and Ms. Puls will both have an
25   opportunity to speak on your behalf.

1      So we'll set a sentencing date.
2              COURTROOM DEPUTY:  Sentencing is scheduled for
3      Wednesday, May 31st at 1:30 in Rutland.  Again, that's
4      Wednesday, May 31st at 1:30 in Rutland.
5              THE COURT:  Ms. Puls, any objection to Mr. Puma's
6      continued detention pending the sentencing hearing?
7              ATTORNEY PULS:  Not at this time, Your Honor.
8              THE COURT:  All right.  Ms. Fuller, anything more
9      from the prosecution's side?
10             ATTORNEY FULLER:  No, thank you, Your Honor.
11             THE COURT:  All right.  Ms. Puls, from you, anything
12     further?
13             ATTORNEY PULS:  No, Your Honor.  Thank you.
14             THE COURT:  All right.  Mr. Puma, I'll look for you
15     in May, and we'll bring your case to a conclusion then and
16     through the sentencing process, okay?
17             THE DEFENDANT:  Yes, that sounds good.
18             THE COURT:  All right.  Good enough.  Good to see
19     you.  Thank you.
20             THE DEFENDANT:  Good.  Thank you.
21
22
23         (Whereupon at 1:26 p.m. the hearing was adjourned.)
24
25

1              C E R T I F I C A T E

2              I, Sunnie Donath, RMR, Official Court Reporter

3    for the United States District Court, District of Vermont, do

4    hereby certify that the foregoing pages are a true and accurate

5    transcription of my stenographic notes of the hearing taken

6    before me in the above-titled matter on February 1, 2023 to the

7    best of my skill and ability.

8              I further certify that I am not related to any of the

9    parties thereto or their counsel, and I am in no way interested

10   in the outcome of said cause.

11

12

13

14

15

16   *Sunnie Donath, RMR*
     --------------------------------

17              Sunnie Donath, RMR

18

19

20

21

22

23

24

25